UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL LEE CURNEY,

    *Petitioner*                CRIM. CASE NO: 1:15-20314
                               CIVIL CASE NO: 1:17-11042
*v.*                               DISTRICT JUDGE THOMAS L. LUDINGTON
                               MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
and VARIOUS OTHER MOTIONS**
(Docs. 23, 24, 30, 31, 35)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (Doc. 23) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the following motions also be **DENIED**:

• Petitioner's motion to supplement (Doc. 24);

• Petitioner's motion for subpoena (Doc. 30);

• Petitioner's motion to amend (Doc. 31); and

• Respondent's motion to dismiss Petitioner's supplements (Doc. 35) as moot.

**II.    REPORT**

    **A.    Introduction**

I first note that Petitioner's motion to vacate was titled "Motion under Fed. R. Crim. P. 52(b)" but was construed as a motion to vacate sentence under §2255. (Doc. 26.) Petitioner agreed

that the motion was more properly classified as a §2255 motion. (Doc. 25.) Accordingly, the motion will be treated as such.

On May 27, 2015, Petitioner was charged in an indictment with distribution of heroin in violation of 21 U.S.C. § 841(a)(1)(Count 1). Petitioner was detained pending trial. (Doc. 7.) Petitioner pleaded guilty to the sole count of the indictment, pursuant to a Rule 11 plea agreement, on July 29, 2015. (Doc. 12.) On November 5, 2015, a sentencing hearing was held and on November 12, 2015, judgment entered committing Petitioner to the Bureau of Prisons for 140 months. (Doc. 19 at 2.) On October 31, 2016, Petitioner filed the instant motion to vacate sentence. (Doc. 23.) A response has been filed (Doc. 34,) and Petitioner replied. (Doc. 38.) Petitioner has also filed various other motions, i.e. a motion to supplement his motion (Doc. 24,) a motion for issuance of subpoena for in camera review of any and all documents related to the dual prosecution agreement between the United States Attorney's Office and the Attorney's Office for Bay City State Court 74th District Court that is a part of the Project Safe Neighborhoods Program. (Doc. 30,) and motion for leave to amend pleadings, (Doc. 31.) In addition, Respondent has responded to the motion for issuance of subpoena (Doc. 34) and Respondent has filed a motion to dismiss documents 30 and 31. (Doc. 35.)

Petitioner's §2255 motion to vacate his sentence asserts that the government violated his Fifth Amendment due process and Sixth Amendment rights via the plea agreement because it included a collateral attack waiver (Doc. 23 at 1-3) and that his trial counsel was ineffective because she failed to challenge application of the career offender provision of the guidelines and that his "prior offense for, attempt - del/mfg. >50 grams cocaine, sentence to probation, 1-30-2008,

2

is clearly an possession offense. Also Def/Mrg. >50 grams cocaine, sentence to 576 days and $750 dollar fine on 8-13-2009." (Doc. 23 at 6.)

    **B.    Law and Analysis - Motion to Vacate (Doc. 23)**

        *1.    Legal Standards*

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense–not what bears a false label of 'strategy'–based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir.

2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 694. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Id.* at 369 (citations omitted).

> 2. *Analysis*

Petitioner first challenges application of a collateral attack waiver. However, the Rule 11 plea agreement in Petitioner's case did not waive his right to collaterally attack his sentence. The agreement reads, "Nothing in this waiver shall be construed to bar a claim of ineffective assistance of counsel, provided that the defendant properly raises such claim by collateral review under 28

4

U.S.C. §2255." (Doc. 12 at ID 43.) Since Petitioner has properly raised his claim based on ineffective assistance of counsel, that argument will now be addressed.

Petitioner argues that his trial counsel was ineffective because she failed to challenge application of the career offender provision of the guidelines and that his "prior offense for, attempt - del/mfg. >50 grams cocaine, sentence to probation, 1-30-2008, is clearly an possession offense. Also Def/Mrg. >50 grams cocaine, sentence to 576 days and $750 dollar fine on 8-13-2009." (Doc. 23 at 6.) Petitioner was convicted of possession of controlled substances thrice in the past, i.e., January 18, 2008 (cocaine), September 23, 2013 (cocaine), and October 18, 2013 (cocaine). (Doc. 12 at ID 51.)

However, as Petitioner acknowledges in his argument, he was also convicted of Attempted delivery/manufacture of less than 50 grams cocaine on January 30, 2008, and he was convicted of Delivery/manufacture of less than 50 grams cocaine on August 13, 2009. (Doc. 12 at ID 51.) Petitioner argues that these two convictions were not properly used to enhance his sentence under the career offender sentencing guidelines and thus, his attorney was ineffective for not challenging the career offender status.

It is unclear why Petitioner thinks that these two convictions are not qualifying. Certainly delivery/manufacture of cocaine is a qualifying conviction as even attempted delivery/manufacture of cocaine is a controlled substance offense that carries a maximum penalty in excess of one year incarceration and is a proper predicate offense under the career offender guidelines. M.C.L. 333.7401(2)(a)(iv); *Alexander v. United States*, No. 11-20180, 2016 WL 6158961, at *5 (E.D. Mich. Oct. 24, 2016). Therefore, he was properly considered a career offender based on two prior

controlled substance offense convictions and his counsel was not ineffective for failing to raise this meritless argument.

To the extent that Petitioner challenges the career offender guideline provision, such a challenge lacks merit either on direct review or collateral review. In *Johnson*, the Supreme Court held that the Armed Career Criminal Act's (ACCA's) residual clause, i.e., the clause that defines a "violent felony" to include an offense that "involves conduct that presents a serious potential risk of physical injury to another" is unconstitutionally vague and violates due process. 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has further held that *Johnson* has retroactive effect in cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016); *accord*, *In Re Watkins*, 810 F.3d 375, (6th Cir. 2015).

The Sixth Circuit held that since the United States Sentencing Guidelines (USSG) § 4B1.2 also contains a residual clause that is identical in wording to the residual clause in the ACCA, the *Johnson* rationale applies equally to the sentencing guidelines residual clause defining a crime of violence. USSG § 4B1.2(a); *United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, at *8 (6th Cir. Mar. 13, 2016). However, the United States Supreme Court in *Beckles v. United States*, 137 S. Ct. 886 (Mar. 6, 2017), abrogated *Pawlak* and held that the sentencing guidelines are not subject to a void-for-vagueness challenge. Therefore, the residual clause of the career offender sentencing guidelines remains viable and any claims challenging the guideline must fail.

Thus, there is no Sixth Circuit or United States Supreme Court precedent showing that Petitioner is entitled to any relief from his sentence. In addition, as noted by the government, Petitioner was not convicted under any provision referring to crimes of violence but rather was convicted based on predicate controlled substance offenses. Accordingly, none of the nuanced

arguments pertaining to provisions defining crimes of violence are of any relevance to Petitioner's case. Therefore, counsel could not have been ineffective for failing to raise frivolous challenges.

Finally, counsel was not ineffective for failing to argue for the case to be "moved back down" to the Michigan state court, due to the "small amounts of heroin[.]" (Doc. 23 at ID 113.) First, this Court has no authority to remand or move the case back down to a state court. *United States v. Gray*, 382 F. Supp. 2d 898, 901 (E.D. Mich. 2005). Petitioner does not argue that jurisdiction was not proper in the federal court but instead appears to contend that he should have been prosecuted in state court because of the disparity between sentencings in state court versus federal court for the same controlled substance offense. Similar arguments have been squarely rejected. *See, e.g., United States v. Bovee*, 291 F. Supp. 2d 557, 563 (E.D. Mich. 2003) (allowing downward departures for federal sentences because Michigan courts would apply a lesser sentence would undermine the goal of uniformity that Congress sought to ensure in enacting the sentencing guidelines); *United States v. Schulle*, 144 F.3d 1107, 1110-11 (7th Cir. 1998); *United States v. Snyder*, 136 F.3d 65, 68-70 (1st Cir. 1998); *United States v. Searcy*, 132 F.3d 1421, 1422 (11th Cir. 1998). Accordingly, counsel could not have been ineffective for failing to raise this meritless argument.

For all the reasons stated above, I recommend that Petitioner's motion to vacate be denied.

### C.     **Evidentiary Hearing**

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on the allegations raised in his motion.

### D. Other Motions

#### 1. Motion to Supplement - Doc. 24

Here, Petitioner argues that he should be allowed to amend to include an argument under *United States v. Hinkle,* which was decided in light of *Mathis v. United States.*

As discussed above, *Johnson* concerned the second half of the phrase under the ACCA §924(e)(2)(B)(ii), *i.e.*, the residual clause. The residual clause follows a list of enumerated violent felonies under §924(e)(2)(B)(ii), *i.e.*, "burglary, arson, or extortion, involves the use of explosives

8

. . . ." *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243 (2016) governs how to interpret whether a state conviction qualifies under this list of generic offenses.

In *Mathis*, the Court held that in determining whether a prior state violent felony conviction counts toward a federal sentence enhancement under the ACCA, courts must apply the categorical approach - not the modified categorical approach - where a criminal statute establishes various means for satisfying a single element. *Mathis* focuses on the portion of the same subsection of the ACCA that was not addressed by the Court in *Johnson*. The Court in *Mathis* found that Iowa's burglary statute had a broader locational element than generic burglary and thus, the Iowa conviction could not qualify as a prior violent felony conviction under the ACCA's enumerated offenses of "burglary, arson, or extortion, involves the use of explosives . . . ." §924(e)(2)(B)(ii).

On October 26, 2016, the Sixth Circuit decided *United States v. Ritchey,* 840 F.3d 310 (6th Cir. 2016). The Sixth Circuit provided a method for analyzing potential predicate convictions used under the ACCA as interpreted by the Court in *Mathis* and held that a conviction under Mich. Comp. Laws §750.110, for breaking and entering a building with intent to commit a felony or larceny therein, could not qualify as a violent felony under the ACCA since its elements were broader than those of the generic enumerated offense of burglary. Therefore, the Sixth Circuit vacated Ritchey's sentence and remanded for resentencing consistent with its decision and the United States Supreme Court's decision in *Mathis*.

Case law on the topic of either statutory (ACCA) or guideline (career offender) enhancement for violent offenses continues to unfold; however, none of these interesting interpretations are directly applicable to Petitioner because his sentence was not enhanced under the career offender guideline provision covering violent crimes. § 4B1.2(a). Petitioner was

sentenced as a career offender under § 4B1.1 because he had two prior controlled substance convictions.

In *Hinkle,* however, the Fifth Circuit applied the Supreme Court's reasoning in *Mathis* to the prior controlled substance convictions provision of the Sentencing Guidelines. 832 F.3d at 574. The Fifth Circuit recognized that *Mathis* dealt with the ACCA, but concluded that its reasoning regarding application of the categorical and modified categorical approaches was controlling even when determining whether the prior controlled substance convictions provision of the Sentencing Guidelines was applicable. *Id.* at 574–75. The *Hinkle* Court then concluded that the "method used to deliver a controlled substance" was a means, not an element, of committing the Texas crime. For that reason, the categorical approach was applied, meaning that the generic federal crime for delivering a controlled substance was compared in scope to all potential means of "delivering" under the Texas statute. *Id.* at 575–76. As the Fifth Circuit held:

> The "delivery" element of Hinkle's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense." This "mismatch of elements" means that Hinkle's conviction for the knowing delivery of heroin is not a controlled substance offense under the Guidelines. That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1.

*Id.* at 576 (quoting *Mathis*, 136 S.Ct. at 2251).

The Government argues that Petitioner's prior drug convictions are valid predicate offenses under § 4B1.1 even when viewed through the analytical framework of *Hinkle and Mathis*. Petitioner was convicted in state court of attempted delivery/manufacture of less than 50 grams cocaine on January 30, 2008, and he was convicted of delivery/manufacture of less than 50 grams cocaine on August 13, 2009 under M.C.L. § 333.7401(2)(a)(iv). (Doc. 12 at ID 51.)

10

Because provisions in the Michigan statute carry different punishments, they are alternative elements and the modified categorical approach is applied. *See Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then ... they must be elements."). Thus, the comparison to the generic federal offense focuses on whether these elements are broader than the generic federal offense. They are not. *Compare* U.S.S.G. 4B1.2 ("The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."), *with* M.C.L. § 333.7401(1) ("[A] person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance."), *and* § 333.7403(1) ("A person shall not knowingly or intentionally possess a controlled substance.").

The *Hinkle* decision rested on the differences between the definition of "delivery" in the Texas statute compared to the generic federal definition. Here, however, the definitions of "delivery" are materially identical. The Michigan statute defines "delivery" as "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." M.C.L. § 333.7105(1). Federal law defines "delivery" as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Because Petitioner's state crimes of conviction are "the same as, or narrower than, the relevant generic offense," they were properly used as predicate offenses for the purposes of characterizing him as a career offender under § 4B1.1 of the Sentencing Guidelines. *Mathis*, 136 S. Ct. at 2257.

Since Petitioner's motion to supplement (Doc. 24) raises issues that do not merit relief, the motion should be denied.

### 2. *Motion to Amend - Doc. 31; Motion for Subpoena - Doc. 30*

In this motion, Petitioner seeks to amend his motion to vacate to include arguments that state and federal prosecutors, through Project Safe Neighborhoods, engaged in misconduct and violated his due process rights. (Doc. 31.) In a related motion, Petitioner seeks to subpoena all information relating to the Project Safe Neighborhoods. (Doc. 30.)

Project Safe Neighborhoods is a "national initiative aimed at controlling gun violence" and "[u]nder this crime prevention initiative, defendants who meet specific criteria may be given an opportunity to plead guilty in state court to a felony firearm offense in lieu of federal prosecution." *United States v. Wallace*, No. 04-80412, 2006 WL 322478, at *1 (E.D. Mich. Feb. 10, 2006). Petitioner was not charged or convicted of a felony firearm offense. However, for completeness, the court will also consider whether the rule established by *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006) offers petitioner any redress.

Morris was charged in Wayne County, Michigan, with several firearm and drug felonies pursuant to the "Project Safe Neighborhoods" project, a joint effort between Michigan and federal authorities. *Id*. at 598. Morris met with his attorney only briefly, in a non-private "bull pen" setting, immediately before his arraignment, with an attorney not skilled in federal practice. *Id*. at 598-99. At the hearing, Morris was offered a take-it-or-leave-it plea agreement, which would have resulted in three to six years of imprisonment. *Id*. at 598-99. The plea agreement included a provision stating that if he accepted the state plea, federal prosecutors would not pursue his case. *Id*. at 600. Morris was erroneously counseled by his attorney (who was in turn erroneously counseled by a

federal prosecutor) that he would face approximately sixty-two to sixty-eight months of imprisonment if charged at federal law, whereas in reality he faced more than ninety months of imprisonment. (*Id*. at 598-99). The Sixth Circuit concluded that Morris was denied effective assistance of counsel both because no competent attorney could provide effective assistance under the particular circumstances of his arraignment and plea offer (*i.e.* a violation of the Sixth Amendment as set forth in *United States v. Cronic*, 466 U.S. 648 (1984)), and because his attorney provided advice which fell below the objective standard of reasonableness based on her misunderstanding of the federal sentencing guidelines (*i.e.* a violation of the Sixth Amendment per *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985)). The Sixth Circuit also found that the USAO "was involved in deciding whether a plea offer would be made available to Morris in state court, and the state court plea offer included an agreement that Morris would not be prosecuted in federal court, . . . [thus] the United States Attorney's Office made itself a party to the state court plea offer." *Morris*, 470 F.3d at 600. As a consequence, the Sixth Circuit found that Morris was entitled to the benefit of the state plea agreement "based on traditional principles of contract law," and that the district court was empowered to dismiss the federal indictment to vindicate this agreement. *Id*.

In sum, a defendant might qualify for relief under *Morris* if: 1) he received ineffective assistance from state trial counsel with regard to state plea negotiations; 2) the USAO was so intertwined with the state plea process that a court would be "justified in enforcing the plea offer against it based on traditional principles of contract law;" and 3) the federal government later prosecutes the defendant for the same conduct involved in the state plea process. *Morris*, 470 F.3d at 600. Failing any of these three factors, relief under *Morris* will be unavailing.

Here, Petitioner does not even contend that any plea negotiations occurred, let alone that he was offered a state court plea and was given poor advice regarding whether to accept it or not. Instead, Petitioner refers to being arrested under a warrant citing Michigan law, then he indicates that the state authorities were going to determine whether he would be accepted for state drug court and whether he should be offered any plea agreements. However, before any of this occurred, his case was referred to the Assistant United State's Attorney's Office for federal prosecution. (Doc. 31 at ID 148.) Petitioner asserts that should have been given the "opportunity" to "plead to state charges which carried a guideline range of 7-36 months[.]" (Doc. 31 at ID 146.) Unlike the defendant in *Morris*, Johnson was not improperly advised of his potential sentencing exposure under federal law, he was not forced to meet with his state trial attorney under conditions which would prevent even a competent lawyer from rendering effective counsel, nor was he given a state plea offer which included any promises about federal prosecution. *See*, *United States v. Hoig*, No. 11-20781, 2012 WL 5265433, at *3 (E.D. Mich. Oct. 23, 2012) (finding *Morris* inapplicable where the defendant was advised of the state plea offer, he was not erroneously advised of his exposure, he was "in fact assured, that if he did not accept the state deal, he would face federal indictment").

The facts of this case do not implicate the rule of *Morris*, and Petitioner should not be given the opportunity to amend his motion to vacate where he could not succeed on a claim of ineffective assistance of counsel or any other claim based on *Morris*. *United States v. Shawn DeWayne Johnson*, No. 1:11-CR-49, 2015 WL 6040306, at *3 (W.D. Mich. Oct. 15, 2015) (denying §2255 claim of ineffective assistance of counsel where there was no evidence the federal prosecutor was involved in plea offer in state court and plea offer itself did not include an agreement that petitioner would not be prosecuted in federal court); *Peoples v. United States*, No. 1:03-CR-165,

2008 WL 1780952, at *3 (W.D. Mich. Apr. 16, 2008) (denying §2255 motion based on ineffective assistance of counsel where "the federal government was not a party to Petitioner's state court plea agreement[,]" "the United States Attorney's Office played no role in extending a plea offer to Petitioner[,]" "state prosecutors had no power or authority to bind the United States to any plea agreement that would have dismissed or prevented federal charges[,]" the federal court "had no authority to dismiss the federal indictment because the federal government was not a party to Petitioner's state court plea agreement" thus, "federal counsel was not deficient for failing to move this Court to dismiss the indictment.").

Accordingly, these motions (Doc. 30, 31) should also be denied.

       3.    *Motion to Dismiss Petitioner's supplements - Doc. 35*

In this motion, Respondent argues that the motions to supplement raise arguments that would be untimely and thus, should be denied. (Doc. 35.) Since the Court recommends denying the motions on the merits, this motion should also be denied as moot.

    **E.**    **Conclusion**

For all the reasons stated above, I recommend that the Court deny Petitioner's motion to vacate (Doc. 23), deny his motion to supplement (Doc. 24,) deny his motion to amend (Doc. 31,) deny his motion for subpoena (Doc. 30,) and deny Respondent's motion to dismiss Petitioner's supplements. (Doc. 35.)

**III.**    **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another

party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 3, 2017          S/ PATRICIA T. MORRIS
                             Patricia T. Morris
                             United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Samuel Lee curney #51082039 at Gilmer Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 6000, Glenville, WV 26351.

Date: April 3, 2017                        By s/Kristen Castaneda
                                                            Case Manager